ON REHEARING
The original opinion issued in this case is withdrawn and the following is entered as the Court's opinion in this appeal and cross-appeal.
This case presents complex and novel procedural and substantive questions. The case reaches us in the following posture. Utah Foam Products, Inc., a supplier of foam roofing products, sued Polytec, Inc., an Alabama corporation which had applied a foam roof to a building in Birmingham, on Polytec's account due.[1] Polytec filed a permissive counterclaim regarding a transaction in Mobile and added counterdefendants, alleging that Utah Foam and others had wrongfully deprived Polytec of business. The trial court granted Utah Foam's motion for summary judgment on the complaint and certain motions to dismiss the counterclaim. Polytec filed an amended counterclaim, of which the trial court dismissed two counts and denied motions to dismiss or strike a third count. Polytec appeals from the dismissal of the two counts and Utah Foam cross-appeals from the failure to dismiss the other count.
The counterclaim gives substantially the following statement of facts which are to be taken as true for the purpose of ruling on a motion to dismiss:
Polytec was in the business of selling and applying waterproofing materials, primarily urethane foam. In March 1980 Utah Foam sold Polytec a machine for applying foam and a quantity of foam. Polytec paid in advance for the machine but purchased the foam on credit. Later that month, Gerald F. Chadbourne, a salesman for Utah Foam, met Phil Cashion, Polytec's president, and James C. Taylor, a Polytec representative, in Birmingham. Chadbourne demonstrated the use of the machine by applying foam to the roof of a building, apparently pursuant to a Polytec contract with the building owners.
According to Polytec, Chadbourne discussed with Cashion and Taylor the prospect of "Polytec becoming a distributor of the products of Utah Foam in the southeastern United States." Polytec used a process whereby the foam was coated after application with a waterproofing material called Miracote, made by Miraco, Inc., a Pennsylvania company that Polytec represented. During the discussions with Chadbourne, Cashion talked on the telephone with a person at Miraco and obtained an agreement for Miraco to underwrite half of the costs of testing the use of Miracote with Utah Foam's urethane foam.
After the meeting in Birmingham, Polytec conducted a presentation at the temporary Mobile City Hall to demonstrate the applications of urethane foam and Miracote, allegedly at the request of Michael A. Guarino. Guarino was identified in the counterclaim as "an employee of the City of Mobile and advisor with respect to the Mobile Aerospace Industrial Complex (herein `the *Page 685 
Complex'), owned by the City of Mobile and leased to Teledyne [Continental Motors]." Buildings at the Complex were damaged by Hurricane Frederic and Teledyne contracted with J.O. Lockridge[2]
Company, a Texas-based firm, to perform repair work. Those attending Polytec's demonstration included Guarino; John Binford, a Lockridge employee and spokesman; Roderick Slater, an engineering and architectural consultant to the city; and some twenty other employees of Teledyne, the City of Mobile, and the Complex.
Following the presentation, Binford, Slater, and a Teledyne representative accompanied Taylor to Birmingham to inspect the recently installed urethane roof. Cashion telephoned Chadbourne, reaching him in the state of Washington, and spoke of Polytec's interest in obtaining a contract with Teledyne. Chadbourne flew to Mobile on April 20, 1980.
Cashion, Taylor, and Chadbourne met for approximately three hours with Binford, Slater, and others at the Complex on April 21. The Polytec representatives and Chadbourne discussed the proposed Teledyne contract over breakfast the following morning. Cashion then drove Chadbourne to the Complex where Chadbourne attended a meeting to which Binford had invited him.
Polytec alleges that the next day, Chadbourne informed Cashion "that the Teledyne people were going to repair the buildings with new built-up roofs and that Polytec should forget about getting a contract to put on a urethane foam roof." On April 24, Cashion drove Chadbourne to Birmingham, where they talked with officials about roofing repairs to the civic center. Chadbourne left Birmingham by airplane that afternoon.
The factual allegations of the counterclaim conclude:
 "12. On or about May 7, 1980, Chadbourne returned to Mobile and telephoned Cashion informing him that Utah Foam had sold two machines to Lochridge for it to use in applying urethane foam roofs to the buildings in the Complex.
 "13. On approval from the City of Mobile, Lochridge and Utah Foam contracted with Teledyne and repaired the roofs of the buildings in the Complex with urethane foam after Chadbourne personally applied a new urethane foam roof to the residence of Guarino. . . ."
The original counterclaim, filed on March 2, 1981, named Utah Foam, Chadbourne, Lockridge, Binford, Guarino, and fictitious parties as counterdefendants. Count one alleged that the counterdefendants "conspired to injure Polytec and Cashion by depriving them of the opportunity for doing the roofing work for Teledyne at the Complex and the profit that would have been made from doing the work." Count two alleged that the counterdefendants "impliedly represented" that foam for the Complex would be acquired through Polytec, intending "to induce Polytec and Cashion to rely upon the implied representation." Count two alleged further elements of a fraud claim and stated that the acts constituted a violation of Code 1975, §§ 6-5-101, -102, and -103.
The trial court granted Utah Foam's motion for summary judgment on March 16, 1981, awarding Utah Foam the full amount sought in the complaint. On April 2, Utah Foam moved to dismiss the counterclaim. On the same date, Lockridge and Binford moved to dismiss the counterclaim or, in the alternative, for a more definite statement. Guarino filed a motion to dismiss on April 9.
On June 18, 1981, the trial court entered an order granting Utah Foam's motion to dismiss and an order granting Guarino's motion to dismiss. No order was ever entered regarding Lockridge and Binford's motion. On June 26, Polytec filed a motion for the court to set aside the orders of June 18 and to overrule both motions. The trial court denied this motion on October 21, 1981.
On November 3, 1981, Polytec filed an amended counterclaim containing three *Page 686 
counts, numbered three, four, and five. Count three alleged that Utah Foam impliedly agreed to award Polytec the contract for roofing the Complex and agreed to make Polytec its exclusive distributor for the southeast. Counts four and five alleged conspiracy and fraud claims similar to those in counts one and two of the original counterclaim. Utah Foam filed a motion to strike the amendment to the counterclaim. Guarino filed a motion to dismiss the amended counterclaim.
On February 1, 1982, the trial court granted Utah Foam's motion to strike and Guarino's motion to dismiss as to counts four and five of the amended counterclaim and denied the motions as to count three. On March 4, 1982, the court entered a final judgment on counts four and five under Rule 54 (b), A.R.Civ.P., as to all counterdefendants. Polytec appealed from this order and Utah Foam cross-appealed from the failure to dismiss count three of the amended counterclaim.
In the opinion issued on May 27, 1983, this Court dismissed the appeal as untimely. The Court viewed the June 18 orders dismissing the original counterclaim as final orders and Polytec's motion to set aside those orders as a Rule 59, A.R.Civ.P., motion to alter, amend, or vacate the orders of dismissal. Under this view, the motion to set aside was pending for longer than the ninety days allowed by Rule 59.1 and was thus denied by operation of that rule on September 24, 1981. Because no appeal was taken within 42 days of that date, the Court dismissed the appeal.
Polytec's application for rehearing points out that the trial court's June 18 orders did not dispose of the counterclaim against Lockridge and Binford. Utah Foam, in opposition to the application for rehearing, argues that Polytec did not properly file the original counterclaim and did not bring in the additional counterdefendants in accordance with the rules of civil procedure. Utah Foam argues that Lockridge and Binford were thus never parties and the failure to rule on their motion to dismiss the counterclaim did not affect the finality of the June 18 orders.
Rule 13 (b), A.R.Civ.P., states that "[a] pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Polytec's counterclaim is a permissive counterclaim within the ambit of this rule. Therefore, if Polytec wished to assert its claim as a counterclaim, the proper time to do it was when it filed its answer. Rule 7 (a). This Polytec did not do. Instead, Polytec in its answer denied that it was indebted to Utah Foam because Utah Foam was indebted to Polytec "for a substantial sum of money . . . as will be more fully alleged by way of counterclaim to be filed by the defendants upon completion of initial discovery from" Utah Foam.
The proper course for Polytec to have followed when ready to file its counterclaim was to seek leave of the court: "(f) Omitted Counterclaim. When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." Rule 13. None of the counterdefendants objected to the counterclaim on this ground, however, so we deem any objection for failure to obtain leave of the court to have been waived.
Nor did Polytec seek permission of the court to bring parties other than Utah Foam into the action. Rule 13 (h), A.R.Civ.P., provides that "[p]ersons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20." Rule 19 relates to joinder of persons needed for a just adjudication and there is no indication or allegation that it applies to this case. Rule 20 allows permissive joinder, but does not under its own terms require leave of court. Utah Foam asserts that Rule 21, including the following provision, should be read into Rules 19 and 20: "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any *Page 687 
stage of the action and on such terms as are just."
Polytec responds with the following quotation regarding the Federal rule from which Rule 13, A.R.Civ.P., derives:
 "Under the 1966 revision of Rule 13 (h), it is not clear whether leave of the court must be obtained before a defendant can bring in new parties as additional defendants to a counterclaim. Former Rule 13 (h) inferred [sic: implied] that such leave was necessary since it stated `the court shall order them to be brought in . . .' However, this language was omitted in favor of the present provision that `persons . . . may be made parties . . . in accordance with provisions of Rules 19 and 20.' Good arguments can, therefore, be advanced that leave of court is no longer necessary if the new parties are being brought in on a counterclaim which is raised in the original answer."
3 J. Moore, Moore's Federal Practice ¶ 13.39, p. 13-239 (2d ed. 1983) (citations omitted).
Polytec also points out that no counterdefendants objected below to the failure to seek leave of court to add the additional counterdefendants. They all filed motions to dismiss the counterclaim, but not on the ground that Polytec failed to obtain leave of court. Therefore, we must take any objection on this ground as waived.
Thus, for our purposes, the counterclaim and all counterdefendants were properly before the trial court. The failure of the trial court to rule on Lockridge and Binford's motion to dismiss resulted in those two parties remaining as counterdefendants even though final judgments had been entered in favor of Utah Foam and Guarino. While Polytec's motion to set aside the dismissals was pending, Polytec propounded interrogatories to Lockridge, and Lockridge answered them. Moreover, we note that Utah Foam's motion to dismiss the counterclaim did not include Chadbourne as a movant. Thus, although the parties have made no mention of the original counterclaim as still pending against Chadbourne, the record does not show it as dismissed as to him.
Our original opinion treated the counterclaim as dismissed in its entirety. As the above discussion shows, this was incorrect — although it is difficult to see how Polytec could proceed against Lockridge and Binford without Utah Foam in the action. No Rule 54 (b) order was entered at that time to make the dismissal of Utah Foam and Guarino appealable, so our earlier dismissal of the appeal based on the operation of Rule 59.1 must be set aside and the appeal reinstated.
The appeal alleges error in the dismissal of counts four and five of the amended counterclaim, and the cross-appeal alleges error in the failure to dismiss count three of the amended counterclaim. The first question concerns the procedure for amending a complaint after dismissal.
Utah Foam argues that the trial court's dismissal of counts four and five was correct because "Polytec did not have the right, without first obtaining leave of court, to amend its counterclaim after the court had ruled on three separate occasions that the substantive allegations were insufficient." The rulings mentioned were the summary judgment, which Polytec opposed with an affidavit of Cashion setting out the circumstances forming the basis of the counterclaim; the dismissal of the original counterclaim; and the denial of the motion to set aside the dismissal.
Rule 78 provides an automatic right to amend within ten days after an order granting a motion to dismiss. Polytec did not follow this procedure, but chose instead to file its motion to set aside the dismissal.
Rule 15 (a) provides that "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served. . . ." There is some question whether this rule grants the right to amend after dismissal. A motion to dismiss is not a responsive pleading within the meaning of this rule. Rule 7 (a). Thus, a literal reading of Rule 15 (a) would allow an amendment after the granting of a motion to dismiss. Moore, commenting on the corresponding Federal rule, has observed that *Page 688 
"granting leave as a matter of right after dismissal would completely frustrate the desire for certainty in the termination of litigation." 3 J. Moore, Moore's FederalPractice, ¶ 15.07[2], p. 15-50. He goes on to say that no time limitation governs such an amendment, and that the proper procedure is to file a Rule 59 (e) motion to alter, amend or vacate the judgment or a Rule 60 (b) motion for relief from judgment:
 "If the order of dismissal does not contain leave to amend, which [would put] the other parties on notice that further proceedings are contemplated, and a judgment is entered, an amendment should be allowed only if plaintiff moves for relief under Rules 59 (e) or 60 (b) and complies with the time limits set forth in these Rules."
Id., p. 15-51.
We agree that this would be the better practice. However, although the October 21 order finalized the dismissal of the original counterclaim, the record does not reflect that a judgment was entered, and moreover, the claim against Lockridge and Binford was still pending. Under these circumstances, Polytec was not required to file a Rule 59 (e) motion to vacate the denial of the motion to set aside the dismissal. Thus the failure to file any such motion cannot support the dismissal of counts four and five and require the dismissal of count three.
Utah Foam's motion to strike the amendment to the counterclaim gave as grounds that "all claims and counterclaims in this action have been resolved, the amendment asserts either restatement of dismissed claims or new claims which ought to have been included in the counterclaim when filed February 29, 1981, and the amendment is interposed for purposes of delay." Guarino's motion to dismiss was essentially a 12 (b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.
The court, in granting final judgment on counts four and five, ordered those counts dismissed "as to Utah Foam Products, Inc., Gerald F. Chadbourne, J.O. Lochridge [sic] Company, John Binford, and Michael A. Guarino." Because the amendment was subject to disallowance on the court's own motion under Rule 15 (a), dismissal as to all parties, even those who filed no motion to dismiss or strike the amendment, is not error as such. The question is whether the trial court violated the standard that amendments are to be "freely allowed when justice so requires."
Count four alleges that the counterdefendants
 "induced Polytec and Cashion to make the presentations at the Complex . . . impliedly promising . . . that Polytec would be awarded the contract to perform the work.
 "The defendants to this counterclaim acted in concert to accomplish the lawful end of having Polytec and Cashion demonstrate and persuade Teledyne and the City of Mobile to reroof the buildings in the Complex with urethane foam by means of concealing from Polytec and Cashion the fact that Polytec would not be awarded the contract to perform the work and that instead Lochridge and Utah Foam would do it."
Count five alleges that the counterdefendants
 "willfully misrepresented to Polytec and Cashion that if Teledyne and the City of Mobile made the decision to reroof the Complex buildings with urethane foam that Polytec would be awarded the contract to do the work, which representation was made by those defendants to induce Polytec and Cashion to demonstrate and persuade Teledyne and the City of Mobile, which they did to their injury."
Count five concludes that the misrepresentation was in violation of Code 1975, § 6-5-101.
We proceed to the merits. The crux of Utah Foam's argument supporting the dismissal of counts four and five is that they do not allege any actionable wrongs. It cites Stuart Constr.Co. v. Vulcan Life Ins. Co., 291 Ala. 650, 285 So.2d 920
(1973), as *Page 689 
being remarkably close on point. In that case, a building contractor sued another contractor, an architect, and a corporation taking bids on a construction project. The plaintiff alleged that the corporation and the architect conspired with the other contractor to award that contractor the contract "without regard to the amounts bid by the other bidding contractors." The complaint continued,
 "Thereafter, in furtherance of the conspiracy, the conspirators did wrongfully and with malice interfere with the plaintiff's business by issuing to plaintiff an invitation to submit a bid, all the while knowing of the time, expense and effort that the plaintiff would incur in preparing and submitting a bid."
Id., 291 Ala. at 653, 285 So.2d 920.
This Court agreed with the trial court that the complaint did not state a claim, because the corporation was under no duty to award the contract to any particular bidder. The Court pointed out that the plaintiff did not allege that the contractor made any promise or inducement to the plaintiff to get it to submit a bid, nor that there was any business relationship between the plaintiff and the corporation. Further, the Court held there could be no liability for a conspiracy unless there was an actionable wrong.
Polytec argues that this case is distinguishable from Stuart
because Polytec has alleged an actionable wrong. Polytec raises five theories under which it asserts counts four and five state a cause of action: prima facie tort, wrongful interference with a business, interference with a prospective business advantage, civil conspiracy, and fraud. Of these, we shall discuss first the argument pertaining to wrongful interference with a business.
One's employment, trade, or calling is a property right, and the wrongful interference therewith is an actionable wrong.Moving Picture Machine Op. Local No. 236 v. Cayson, 281 Ala. 468, 205 So.2d 222 (1967); Bowen v. Morris, 219 Ala. 689,123 So. 222 (1929). "[A]n unlawful invasion of or interference with the pursuit or progress of one's trade, profession, or business is a wrong for which an action lies." Sparks v. McCreary,156 Ala. 382, 387, 47 So. 332 (1908); Alabama Power Co. v.Thompson, 278 Ala. 367, 178 So.2d 525 (1965).
The question of whether defendants were justified in taking the actions interfering with a plaintiff's business is generally for the jury to decide. Evans v. Swaim, 245 Ala. 641,18 So.2d 400 (1944). Furthermore, justification is an affirmative defense. Sparks v. McCreary, supra; see also,Thompson v. Allstate Ins. Co., 476 F.2d 746 (5th Cir. 1973). For these reasons, plaintiff need not plead a lack of justification and any alleged justification is not grounds for a motion to dismiss.
Polytec has alleged that Utah Foam, Chadbourne, Lockridge, Binford, and Guarino conspired to interfere with Polytec's roofing business by inducing Teledyne not to award the Complex roofing project to Polytec even though Polytec conducted the demonstrations which persuaded Teledyne to use urethane foam roofs. Polytec asserts that none of the counterdefendants were in the roofing business and so had no legitimate reason for cutting Polytec out of the job. It appears that Lockridge was a general contractor for Teledyne, however, so Lockridge may have been legitimately interested in obtaining the business for itself. Under the authorities cited above, however, these matters of justification are not proper for consideration on a motion to dismiss or a motion to strike.
Polytec has thus stated a claim for wrongful interference with its business. For this reason, the trial court erred in dismissing counts four and five of the amended counterclaim. We decline to discuss the arguments Polytec makes under the theories of prima facie tort, interference with a prospective business relationship, fraud, and conspiracy. The right to recover under any of these theories coincides more or less with the right to recover for the alleged tortious interference with Polytec's business. The first two theories bear no precedent in this state and so, there *Page 690 
being another theory with ample precedent on which the complaint states a cause of action, we deem it premature and unnecessary to discuss the elements of such theories of recovery. The wrongful conduct and injury to be proved under the fraud and conspiracy theories are virtually the same as those to be proved under the wrongful interference theory.
There is no necessity to address the cross-appeal because the ruling denying the motion to dismiss count three was not a final judgment and the Rule 54 (b) determination did not extend to this count. The cross-appeal is dismissed.
The judgment of the trial court dismissing counts four and five of the amended counterclaim is reversed and the cause remanded.
APPLICATION FOR REHEARING GRANTED; ORIGINAL OPINION WITHDRAWN; CASE 81-530: REVERSED AND REMANDED; CASE 81-556: APPEAL DISMISSED.
TORBERT, C.J., and FAULKNER, JONES and ADAMS, JJ., concur.
[1] Phil Cashion, the president of Polytec, is named with Polytec as a defendant and as a counterclaimant. Except where Cashion's status as a party is material, we shall refer solely to Polytec as the party defendant/counterclaimant.
[2] Spelled "Lochridge" in some places in the record.