ALMON, Justice.
The dispute from which this appeal arises concerns the legislative provisions under which the plaintiff class, academic and vocational instructors with the Department of Youth Services, are to be paid. The trial court held that they are to be paid pursuant to the statutes governing teachers and not those governing merit system employees.
Mary Parks and Arthur Jones filed this action on behalf of themselves and all other similarly situated certified academic and vocational instructors in the Department of Youth Services (DYS). They claimed that they were entitled to a 16% raise in fiscal year 1980-81 under the provisions of Act No. 80-762, 1980 Ala.Acts 1588, and sought declaratory and injunctive relief requiring defendants to pay them this raise. The complaint named as defendants the Alabama Department of Youth Services and its executive director, plus the Alabama Youth Services Board and its members. Plaintiffs later amended their complaint to add as defendants the state budget officer, the state personnel board, its director and members, and the Governor. They sued but later agreed to dismiss the defendants in their individual capacities.
The defendants filed an answer raising various defenses. These defenses are pertinent to this appeal: that § 44-1-22, Code 1975, provides that the employees of DYS “shall be governed by the personnel merit system rules and regulations of the state personnel department”; that Act No. 79-724, 1979 Ala.Acts 1283, and Act No. 80-616, 1980 Ala.Acts 1051, provided 7% and 7½% raises in fiscal years 1979-80 and 1980-81, respectively, for state merit system employees; and that, pursuant to the advice of the state personnel department, DYS paid the plaintiffs the merit system raises.
After defendants filed their answer, plaintiffs filed a motion to maintain the proceeding as a class action. The court granted this motion and ordered that notice be sent to the class members. A notice of pendency of the action was sent to the class members consistent with the requirements of Rule 28(c)(2), A.R.Civ.P. The notice informed the class members that they would be excluded if they so requested by a specified date; that the judgment, whether favorable or not, would include all members who did not request exclusion; and that any member who did not request exclusion could enter an appearance through counsel.
*692 On May 17, 1982, the defendants filed a counterclaim which requested the court to consider “not only the terms of Act No. 80-762 as compared to Act No. 80-616, but also to compare Act No. 79 — 724 and Act No. 79-540 as well as House Bill No. 480 and House Bill No. 150,”[1] and to do equity to the parties under all these acts. The court held a hearing in the case on May 24, 1982, and ruled that the plaintiffs should be paid under the acts relating to teachers rather than those relating to merit system employees. The court appended to its judgment a computation of the difference in pay that would be due to or from the plaintiffs under the revised schedule. The net result of this computation was that all but four of the plaintiffs owed refunds to the state. One of the plaintiffs who received an award in her favor was plaintiff Parks.
The plaintiffs filed a motion for rehearing and new trial. The denial of this motion is the subject of this appeal, and, because the grounds of the motion are essentially the issues on appeal, we shall set them out in some detail.
The first ground of the motion was that the court granted relief different from that indicated from the bench:
“Specifically the Court told the defendants that they could not recover from the members of the class money or salary paid to them in the form of annual or merit pay raises. Because of these instructions, the plaintiffs did not offer evidence or testimony that they had to establish their right to these raises regardless of whether they were or are considered teachers instead of state employees.”
The second ground alleged in the motion was that the court’s order granted relief wholly outside of the explanation of the matter in controversy sent to the members of the class, and that it was inequitable to change the nature of a class action after notice was sent and the time to opt out of the action had expired.
The third ground was that the counterclaim was barred by laches. The fourth ground was that the counterclaim did not seek to recover money from the class and thus the judgment could not grant such relief. The fifth ground was that neither party offered evidence at the hearing because the court indicated substantial agreement with the plaintiffs’ position, and that if the court had changed its position, equity demanded that plaintiffs be allowed to produce their testimony. This fifth ground alleged that the plaintiffs were prepared to. offer evidence that teachers everywhere in the state receive the annual and merit raises given to merit system employees.
The first issue on appeal incorporates grounds two and three of the new trial motion: Must a counterclaim be filed at the time of or before a defendant files an answer or at least before notice to potential class members informs them of the nature of the lawsuit? Plaintiffs argue that Rule 13(f), A.R.Civ.P., requires leave of court to file a counterclaim not filed with an answer. While we agree with this statement, we find no indication in the record that plaintiffs objected to the counterclaim on this ground. For this reason, and because the parties and the court treated the counterclaim as properly filed,[2] we find no error presented on the basis of Rule 13(f). See Polytec, Inc. v. Utah Foam, Inc., 439 So.2d 683 (Ala.1983) (On Rehearing).
The plaintiffs argue that the due process rights of the class members were violated because the counterclaim resulted in a judgment against them on a claim of which they had no notice and opportunity *693 to be heard. We disagree. The defendants’ answer, filed before the class action notice was sent to the class members, raised the defense that the defendants paid the plaintiffs under the provisions of Acts 79-724 and 80-616. Thus, the issue on which the trial court ordered the refunds was joined before the prospective class members received notice of the pending action.
Although the above discussion shows that the trial court could have rendered the judgment it did with the case in the present posture, the question remains whether the court properly rendered the judgment. This question is addressed in the plaintiffs’ second and third issues, which raise the remaining grounds of their motion for new trial. Plaintiffs state issue two as: May a party to a lawsuit be granted relief that he does not request on an issue which the court has stated is not properly before it? Issue three is: Is it incumbent upon the party alleging payment of money by mistake to offer evidence that the payment was by mistake or unauthorized, or may that party gain relief sought merely by pleading a mistaken payment?
We have addressed the aspect of issue two that alleges the defendants did not request relief in the form of repayments of amounts allegedly improperly made. The remaining aspect of issue two requires some analysis of the relevant pay methods and of the statements of the trial court during the hearing.
Act No. 79-540 provided that, should sufficient funds be available, “[t]he Budget Officer shall allocate funds” to certain state educational institutions, including DYS, to pay specified cost-of-living increases. “[Cjertified academic and vocational instructors ... in the Department of Youth Services shall receive an increase of up to 7% of the state salary allocated in 1978-79 Fiscal Year.” Payments were to be made quarterly on January 1, April 1, July 1, and September 30, 1980.
The legislature passed Act No. 80-762 “to provide a 16% salary increase to the education personnel enumerated in Section 2 of this act,” for fiscal year 1980-81. Section 2 required the state budget officer to make allocations necessary to grant a 16% raise “based on the following: (a) State base salary payable during the 1978-79 fiscal year to ... certified academic and vocational instructors ... in the Department of Youth Services.”
Act No. 79-724 provided a conditional cost-of-living increase of up to 7% for merit system and certain other employees. Section 7 provided that
“The State Personnel Director shall revise the schedule of rates for all employees and officials hereby affected regardless of whether subject to the State Merit System, to reflect the increase herein provided. . .. [Sjuch revisions shall be made only once at the end of the Fiscal Year, that is on September 30, 1980, and shall reflect the actual total annual increase in rates of pay, resulting from the conditional quarterly payments.”
Act No. 80-616 provided a 7½% cost-of-living raise for the same employees as those covered by Act No. 79-724:
“However, any state employee covered under the provisions of this Act, and otherwise eligible for consideration for an annual step increase in salary, shall only be eligible for a maximum step increase in the amount of 2½% at the time of their annual review, which step increase shall be in lieu of any step increase heretofore provided by law.”
Act No. 80-616 also provided for the pay schedules to be revised to reflect the cost-of-living increase.
The trial court was clearly correct in determining that the plaintiffs should have been paid the raises in 79-540 (if available) and 80-762 rather than those in 79-724 and 80-616: the former pair of acts refer specifically to academic and vocational instructors at DYS. The only argument we perceive DYS to make in favor of its interpretation is that all its other employees are merit system employees. The court was also correct in using a formula which based the 16% raise of Act No. 80-762 on the base salary from fiscal year 1978-79. The con *694 troversy raised by the plaintiffs seems to arise from the fact that the trial court took away annual step raises received by the plaintiffs, presumably for the fiscal years 1979-80 and 1980-81.
It appears from the record that the conditional cost-of-living raises paid to teachers in 1979-80 under Act No. 79-540 were only one-fourth of those paid to merit system employees under Act No. 79-724. Thus the plaintiffs, if they received 7% raises under Act No. 79-724, were paid more than they would have been under the proper statute. The court ordered repayment of only three of the four quarterly payments because the first was barred by the statute of limitations. Code 1975, § 6-2-39(a)(6), provides a one-year limitation for recovery of wages and should apply to defendants’ counterclaim as it would to a claim by plaintiffs. Even with relation back of the counterclaim, Rule 13(c), A.R.Civ.P., the face of the record shows that only two of the overpay-ments should have been reached. The plaintiffs point out that the second payment, made on April 1, 1980, was not subject to refund because they filed suit on April 14, 1981. This appears to be correct and should be addressed on remand.
The method adopted by the trial court to compute the difference between what was paid and what should have been paid was to calculate a 16% raise over the 1978-79 base salary and multiply that figure by the number of paychecks received between October 1, 1980 and the date of judgment. From that total amount due to be paid, the trial court subtracted the amount which was paid. For about half of the plaintiff class members, this resulted in amounts owed to DYS. These figures do not include the three quarterly cost-of-living raises, because those were deducted in a separate calculation, which resulted in all but four of the plaintiffs owing money to DYS.
Plaintiffs argue that the above method took away their annual merit raises which they were entitled to receive regardless of the cost-of-living raises. They had a witness present at the hearing who was prepared to testify that teachers across the state receive annual raises just as merit system employees do. He did not testify because, according to the plaintiffs, the trial court indicated that the question of merit raises was not before it, but only cost-of-living raises. The remarks of the trial court on which the plaintiffs base this claim are as follows:
“I’m going to rule on what I think is before me and what is before me at this time on the complaint and counterclaim is an interpretation of how these raises should be done. Based on those raises I don’t think you can ... I don’t think it is before me as to whether or not how they are going to be classified with the exception of for raises. I don’t think those statutes that put them under a merit system step raise, you know; whether they are a one or a two or a three, for base pay purposes or what a teacher makes, for base pay purposes — I don’t believe that’s before me. The only thing I think that has been brought before me on a complaint and counterclaim is how these legislatively passed percentage raises — you know, you may have to look back at what the base is to find that — but I don’t think I’m going to be able to give you any guidance on that because I don’t think the matter is really before me. You may have to get another lawsuit or you may have to get another personnel regulation and we may end up looking at it somewhere down the road, but as the case has been presented to me- — and y’all tell me if I’m wrong — I believe the only thing before me is an interpretation of the legislative raises and which one takes effect; not what it goes back to, whether it’s sixteen percent of State or sixteen percent of a base teacher’s salary.”
The parties explain that in an informal conference after the hearing the judge changed his mind and decided on the refund method that was in fact used. The defendants assert that the judge’s decision is presumptively correct because matters were before him which are not preserved in the record, citing Limbaugh v. Johnston, 393 *695 So.2d 963 (Ala.1981), and Lockhart v. Robbins, 386 So.2d 424 (Ala.1980). The plaintiffs correctly point out that the principle of law found in those cases relates to eviden-tiary matters, whereas the informal discussion after the hearing in this case did not include any presentation of evidence.
We agree with the plaintiffs that an adequate record was not built to determine whether annual merit or step raises received by the plaintiffs should be refunded. Act No. 80-762 provides that the 16% raise would be based on the 1978-79 salary, but it does not require that any interim annual raises be refunded. Plaintiffs’ motion for new trial included an affidavit by their witness that he was at the hearing prepared to testify regarding annual raises for teachers. The trial court induced the plaintiffs not to present this evidence by stating that the matter was not before it. Before the trial court retracted that decision, it should have reopened the matter for the plaintiffs to produce their evidence.
For the reasons stated, the trial court erred in denying plaintiffs’ motion for rehearing and new trial. The judgment is therefore reversed and the cause remanded for the court to reopen the proceedings regarding annual merit raises received by the plaintiffs and the statute of limitations issue on the April 1 quarterly increase.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES and ADAMS, JJ., concur.

. House Bill 150 became Act No. 82-570, 1982 Ala.Acts p. 1061, and gave an 11% raise to merit system employees, effective October 1, 1982. H.B. 480 became Act No. 82-574, 1982 Ala.Acts p. 1066, and gave a 16% raise to, among others, “teachers employed by” DYS, for the 1982-83 fiscal year.

. The plaintiffs defended against the counterclaim based on the statute of limitations, and first raised the defense of laches in their motion for new trial. Even assuming the latter defense was timely, it does not amount to a Rule 13(f) objection.