PER CURIAM.
This appeal is from a dismissal and a summary judgment granted on the basis of the counterplaintiffs’ lack of capacity or standing to sue. This Court has previously reversed a dismissal, and later a summary judgment, against these counterplaintiffs. Polytec, Inc. v. Utah Foam Products, Inc., 439 So.2d 683 (Ala.1983) (Polytec I), and 477 So.2d 295 (Ala.1985) (Polytec II).
Polytec, Inc., and its president, Phil Cashion, counterclaimed against Utah Foam Products, Inc., in Utah Foam’s action against Polytec on an account due. Poly-tec and Cashion also added four other defendants to their counterclaim.[1] The facts and procedural history are set out in detail in Polytec I.
Polytec was dissolved by agreement of its shareholders on December 17, 1980. This dissolution took place pursuant to Ala. Code 1975, § 10-2-202. Effective January 1, 1981, Chapter 2 of Title 10 of the Code was repealed, and Chapter 2A was substituted in its place. Former § 10-2-212, entitled “Continued existence of certain expired, etc., corporations for certain purposes,” provided in pertinent part:
“Corporations whose charters have expired or which have been dissolved otherwise than by judicial order continue to exist as bodies corporate for a period of five years after such dissolution for the purpose of prosecuting or defending actions _ The directors of such corporations shall be trustees thereof with full power to ... prosecute and defend actions .... On application to the circuit court at the principal place of business of the corporation, such trustees may be continued as such for such length of time beyond said five-year period as the court may deem to be necessary for the purposes set forth in this section.”
December 17, 1985, was five years after the dissolution of Polytec. Polytec’s directors did not apply before that date for continuation as trustees so as to maintain this suit. Polytec and Cashion argue that the new provisions of Chapter 2A, especially § 10-2A-203, apply to this case instead of § 10-2-212 because the counterclaim was filed after the repeal of Chapter 2 and its replacement with Chapter 2A. Polytec further argues that the counterde-fendants have waived the right to challenge Polytec’s capacity to maintain its counterclaim because they did not raise this issue in their first responsive pleading filed after the alleged lack of capacity arose.
Because we find the waiver argument dispositive, we pretermit discussion of the interaction of the two successive statutory schemes and their application to the facts of this case. The following facts apply to the waiver issue.
The Court denied rehearing in Polytec II on October 4, 1985. The next significant activity shown in the record occurred on May 13, 1986, when counterdefendant Michael A. Guarino filed a motion for summary judgment, attaching affidavits stating that neither Polytec nor Cashion had a general contractor’s license at the time of the facts at issue and that Polytec would have needed such a license to perform the roof *702 ing work that is the basis of the counterclaim. On May 19,1986, Utah Foam filed a motion for summary judgment. Neither of these motions mentioned Polytec’s lack of capacity.
On May 19, 1986, Guarino filed an amended answer adding, “in addition to the defenses previously filed,” defenses regarding Polytec’s failure to obtain a general contractor’s license. On May 20, 1986, counterdefendants John Binford and J.O. Lochridge[2] Company filed a motion for summary judgment citing the previously-filed affidavits regarding general contractor’s licenses. On May 21, 1986, Utah Foam filed an answer just like that filed on May 19 by Guarino. Binford and J.O. Lo-chridge Company filed such an answer on May 22.[3]
None of these motions or answers raised any question of capacity arising from Poly-tec’s status as a dissolved corporation. The first mention of that status was in Utah Foam’s “second amendment to answer” filed on July 31, 1986. This, of course, was more than seven months after the alleged lack of capacity arose and was after the above-mentioned answers and motions were filed. Guarino, Binford, and J.O. Lochridge Company followed later with defenses based on Polytec’s dissolution.
Rule 9(a), Ala.R.Civ.P., states in part: “When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued ..., he shall do so by specific negative averment.” In Alabama Power Co. v. White, 377 So.2d 930, 933 (Ala.1979), the Court observed that “Even before the adoption of the A.R.C.P., the law in this state was that proof of capacity was not required until capacity was challenged and that a plea to the merits which did not challenge capacity waived that defense” (emphasis added). The Court concluded that “Rule 9 of A.R.C.P. did not change but rather adopted the rule in regard to capacity which prevailed in this state prior to the effective date of A.R.C.P.” Id., at 935. To the same effect, see Thomas v. City of Rainsville, 502 So.2d 346 (Ala.1987); Moseley v. Commercial State Bank, 457 So.2d 967 (Ala.1984); and Gardendale Subaru Motors, Inc. v. Fields, 345 So.2d 1357 (Ala.Civ.App.1976).
Because the counterdefendants renewed their defenses on the merits and added a new such defense without raising Polytec’s alleged lack of capacity, they waived that defense. The trial court therefore erred in dismissing Polytec’s counterclaim.
The summary judgment against Cashion was based on the argument that his claims were purely derivative of Polytec’s and that, because Polytec’s claims had been dismissed, Cashion could no longer maintain his derivative claims. Without deciding the argument that Cashion’s claims are purely derivative, we note that, even if they are, the reversal of the dismissal of Polytec’s claims necessitates the reversal of the summary judgment against Cashion.
REVERSED AND REMANDED.
MADDOX, JONES, ALMON, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and HOUSTON and STEAGALL, JJ., dissent.

. On this appeal, the parties describe these additional defendants as third-party defendants. Polytec I described them as additional counterde-fendants added pursuant to Rule 13(h), Ala.R.Civ.P. Because this status or nomenclature makes no difference in this appeal, we shall simply refer to all of the appellees as counterde-fendants.

. Mr. J.O. Lochridge signed an affidavit spelling his name with an “h"; therefore, it now appears that "Lochridge,” rather than "Lockridge,” is the correct spelling of this name. Cf. Polytec I, n. 2.

. On March 12, 1984, Polytec and Cashion had voluntarily dismissed the fourth counterdefen-dant, Gerald Chadbourne.