329 So.2d 552

Hiram **BRACEWELL,** Individually, and Southeastern Cabinet Company, a Subsidiary of Bracewell Homes Corp.

**v.**

Kenneth **BRYAN.**

**Civ. 598.**

Court of Civil Appeals of Alabama.

March 31, 1976.

J. Ronald Storey, Dothan, for appellant.

J. R. Herring and Buntin & Cobb, Dothan, for appellee.

HOLMES, Judge.

This is an appeal from a jury verdict and judgment thereon in the Circuit Court of Houston County.

The jury found in favor of plaintiff-appellee Kenneth Bryan on the fraud count of plaintiff's complaint, and against defendant-appellant Hiram Bracewell, individually, and d/b/a Southeastern Cabinet Company. Defendant prosecutes this appeal.

The issues on this appeal are whether the learned trial court erred by not granting defendant-appellant's motions for a directed verdict and for judgment notwithstanding the verdict or a new trial.

The pertinent facts as revealed by the record are as follows:

The defendant Southeastern Cabinet Company is a cabinet manufacturing concern and a wholly owned subsidiary of Bracewell Homes Corporation, a corporation. Hiram Bracewell is the major stockholder of Bracewell Homes, and president of Southeastern Cabinet Company.

Plaintiff Bryan in April of 1972 applied for and subsequently obtained employment with Southeastern Cabinet Company. After approximately one year, his employment was terminated. His contentions are that at the time he was hired he was promised a 4% commission on all sales he made, that he did in fact make sales, and that he never received the promised commissions.

Defendant argues that Bryan was never promised any commissions, was not hired as a salesman, and never made any sales for the company.

Bryan testified that he was informed the company was looking for a salesman when he first applied for employment. He further testified that when he was hired he was told by Bracewell he would begin selling after an initial training period, for which sales duties he would receive a salary plus a 4% commission, use of an automobile, and reimbursed expenses.

Further testimony by Bryan was that he made substantial sales of cabinets to contractors engaged in various construction operations.

Bryan also testified as to certain remarks made by his superiors at the company concerning commissions. On more than a dozen occasions he asked his immediate supervisor, Larry Maynard, sales manager of the company, when he would begin receiving his commissions. Maynard replied Bryan would have to discuss the matter with Bracewell. Bryan on one occasion made the same inquiry of Maynard's superior, one Barrett, who responded he did

not know what was going on. After Bryan had been employed for approximately six months, he was summoned by Bracewell, who informed him the cabinet business was apparently going to make it and that his commissions from that point on would vary.

As stated earlier, after about one year of employment Bryan was fired by Maynard the sales manager. Bryan testified that after he was fired he asked Bracewell for his commissions and was informed he was owed no commissions.

Bryan's father testified he had a telephone conversation with Bracewell shortly after Bryan applied for employment. Bracewell during this conversation discussed Bryan's then prospective employment with Bryan's father. The father testified that Bracewell stated Bryan would be paid a commission.

The defendant's testimony, through Bracewell, Barrett, and Maynard, was substantially that Bryan had never been promised commissions, was never employed as a salesman, and had never in fact made any sales. The testimony was that Bryan's duties involved preparation and submission of bids to contractors, but that he never actually made any sales of cabinets to those contractors.

Maynard further testified that any discussions he had with Bryan concerning commissions were purely of a speculative nature.

Bracewell testified he had discussed commissions with Bryan and Bryan's father. However, his testimony was that he told them Bryan would be paid commissions only when he had gained sufficient experience to earn his living strictly from commissions, and when Bryan was in fact placed on such a basis.

The case was submitted to the jury on two contract counts, each alleging defendant owed plaintiff $8,000 in commissions, and one fraud count claiming $8,000 compensatory and $50,000 punitive damages. The jury found for plaintiff on the fraud count and fixed his damages at $10,000. Judgment was entered on the verdict, and defendant appeals therefrom.

Defendant initially contends the trial court erred in allowing the case to go to the jury on the issue of fraud. The same contention is made as regards the issue of punitive damages.

The evidence is in conflict as to whether Bryan was employed as a salesman and made sales, and as to whether he was promised commissions. The resolution of conflicting evidence is the province of the jury. See 18A Ala.Dig. *Trial* Key 143 and cases cited thereunder. The determinative issue is thus whether the evidence is sufficient to support a finding of fraud.

■ It is settled law that for fraud to be predicated on a promise, the promisor at the time of making the promise must have intended not to perform it and to deceive the promisee thereby. *Walker v. Woodall,* 288 Ala. 510, 262 So.2d 756; *Nelson v. Darling Shop of Birmingham,* 275 Ala. 598, 157 So.2d 23.

■ The existence *vel non* of an act of fraud is generally a fact question for the jury. *Mid-State Homes, Inc. v. Holt,* 52 Ala.App. 415, 293 So.2d 476. This is particularly so with regard to the element of intent. As our supreme court said through Chief Justice Heflin in *Walker v. Woodall,* supra:

"Intent is an act or emotion of the mind seldom, if ever, capable of direct proof, but is determined by such just and reasonable deductions from the acts and facts presented as the guarded judgment of a reasonably prudent and cautious man would draw therefrom. *Hagerty v. Hagerty,* 186 Iowa 1329, 172 N.W. 259, 260. Intent is a matter peculiarly within the province of the trier of facts, in this case the jury." (288 Ala. at 513, 262 So.2d at 759)

■ The failure to perform alone is not of itself evidence of intent not to perform at the time the promise was made. *Brock v. Brock,* 90 Ala. 86, 8 So. 11. However, such failure may be considered together with other circumstances in reaching the determination as to whether the requisite intent existed at the time the promise was made. *Brock v. Brock, supra;* 37 Am.Jr. 2d *Fraud and Deceit* § 447.

■ We are of the opinion that the evidence as set out above, when considered in its totality, is sufficient for the jury to have inferred from it that Bracewell had the requisite intent to deceive at the time he promised commissions to Bryan. The failure of Bracewell to perform, Bryan's numerous unanswered inquiries, and Bracewell's remark to Bryan that his commissions would from that point vary, when viewed as a whole, do not unreasonably lead to the conclusion that Bracewell never intended to perform his promise.

Of particular import is Bracewell's statement that Bryan's commissions would vary, made some months after the initial promise. In *Walker v. Woodall, supra,* the court stated:

"However, aside from appellants' failure to perform, this Court feels there was sufficient evidence introduced upon which the jury could infer the requisite intent. For example, the evidence tends to show that later, after Walker agreed to fully insure Woodall's truck, he stated to Woodall that his truck was, in fact, fully insured. This testimony was corroborated by A. L. Johnson, president of the bank that financed Woodall's truck, who testified that Walker told him 'I'll assure you that it's (the truck) fully covered.' From this evidence, which could have been interpreted as a later misrepresentation, the jury could also infer that Walker did not intend to have the truck insured at the time he promised to do so." (288 Ala. at 513, 514, 262 So.2d at 759)

The jury here could similarly have interpreted Bracewell's remark as a later misrepresentation, and inferred from it the requisite intent.

We thus hold that the trial court did not err in submitting the issue of fraud to the jury.

■ We also hold that the trial court did not err in allowing the jury to receive the issue of punitive damages. In Alabama, punitive damages are recoverable where the fraud is committed with the intention to injure and deceive. *Pettus v. Shafer,* 286 Ala. 625, 244 So.2d 573; *Hall Motor Co. v. Furman,* 285 Ala. 499, 234 So.2d 37; *J. Truett Payne Co. v. Jackson,* 281 Ala. 426, 203 So.2d 443. The oft-cited case of *Caffey v. Ala. Machinery & Supply Co.,* 19 Ala.App. 189, 96 So. 454, appears to have originated the doctrine.

■ The intent to deceive is requisite to a finding of fraud in cases such as this where fraud is sought to be based upon a promise. As discussed above, there is evidence from which the jury could have inferred such intent. Therefore, there was no error committed by the trial court in submitting the punitive damages issue to the jury.

Counsel for defendant-appellant finally contends the trial court erred in not granting his motion for judgment notwithstanding the verdict or for a new trial, on the ground that the verdict is contrary to the preponderance of the evidence. We disagree. The discussion of the evidence set out above is also apt in this regard.

We lastly note counsel for the appellee has filed a motion to strike the record in this cause. As grounds for this motion, he asserts that the record was not timely filed.

■ It appears from the record that the trial court extended the time in which the transcript of evidence could be filed. When the extension expired, apparently some time elapsed before the trial court

granted a motion ordering the court reporter to prepare and file a transcript by a set date. However, the trial court is empowered to grant a subsequent extension after the expiration of prior allotted time, if the moving party is not the cause of the delay and the opposing party is not prejudiced thereby. Tit. 7, §§ 827(1), 827(1a), and 827(4), Code of Ala. 1940; *Stevens v. Thompson,* 279 Ala. 232, 184 So.2d 140. We construe the order to the court reporter as a subsequent extension of time, and note that the movant caused no delay and that no prejudice inured to the opposing party. The court reporter filed the record within the time set by the trial court's order. The record was then properly filed with this court within sixty days after its establishment in the trial court. Supreme Court Rule 37.

All issues presented having been considered, and there being no error in the record, the case is due to be affirmed and the motion to strike the record is denied.

AFFIRMED.

WRIGHT, P. J., and BRADLEY, J., concur.