This appeal is from a summary judgment in favor of Trim-Line, Inc. (Trim-Line), and against Robert L. Bond, Sr., the plaintiff below. The question on appeal is whether *Page 366 
summary judgment was appropriately granted.
The underlying facts are as follows: Robert Bond and Trim-Line, Inc., entered into a "Sales Distribution Agreement" on 5 March 1976. That agreement gave Bond a license to use the trade name "Trim-Line" in the operation of a distributorship. Bond's territory, as defined by that agreement, covered, roughly, the southern one-half of the State of Alabama, excluding Mobile, Alabama.
During the following several years, Bond sold portions of his business and Trim-Line extended to Bond's buyers the right to use the trade name "Trim-Line." New distributorships were thereby created. The practical effect of these sales was to carve areas out of Bond's "territory," as that was defined by his 1976 agreement with Trim-Line. As each new territory was created by these sales, it was given a name to distinguish it from Bond's territory (e.g. "Trim-Line of East Alabama," and "Trim-Line of Selma").
In January of 1981, Bond sold a portion of his business to Lee G. Stephens. In March of that year, Stephens was approved by Trim-Line as a distributor. Her distributorship was named "Trim-Line of South Alabama." Stephens operated that business until the following September, at which time she sold it back to Bond. Payment under the contract of sale was to be made in installments.
The events which transpired after Stephens's sale of her business to Bond are the subject of this controversy. Each party's version of those events will be set forth below. What is not controverted is that, on 5 November 1981, Lee Stephens changed the locks on the door of the business offices of Trim-Line of South Alabama, changed the utilities from Bond's name to hers, and "escrowed the cash, checks and accounts receivable."
Bond subsequently filed suit against Trim-Line and Stephens, alleging both defendants acted to convert the assets of his business, and that Trim-Line intentionally interfered with the contract of the sale of Stephens's business to Bond. Summary judgment was granted in favor of Trim-Line as to both issues. The allegations of Bond, Stephens, and Herb Berg (as Trim-Line's representative) are set forth below.
 BOND'S ALLEGATIONS
Bond contends that, prior to his purchase of Stephens's business, in September of 1981, he had a telephone conversation with Herb Berg, Trim-Line's Distributor Development manager, in which Berg assured him that he would be approved as the distributor for Trim-Line of South Alabama upon his purchase of the territory from Stephens.
During that same month, a dispute arose concerning the ownership of "Trim-Line of Alabama," a Montgomery distributorship which Bond had formerly owned and had, allegedly, sold without informing Trim-Line. Bond contends that, on 25 September 1981, Berg suggested that, in light of the threat of litigation concerning that distributorship, Bond "might be wise not to own any distributorship of Trim-Line." He alleged he and Berg agreed that the distributorship called "Trim-Line of South Alabama" remain in Stephens's name, with the understanding that the paperwork would be completed and that Bond be officially named the distributor for that area when the dispute was resolved.
In support of his allegation that he was, in fact, recognized by Trim-Line as its distributor, Bond presents evidence that Berg corresponded with him at the business address of "Trim-Line of South Alabama" in September of 1981, and that he, Bond, placed orders with Trim-Line for materials which were shipped to the business after he had bought it back from Stephens.
Bond further contends that, at the time Lee Stephens entered the business offices of Trim-Line of South Alabama and confiscated the assets of the business, she represented to him that she was acting with the knowledge and authority of Herb Berg. Bond states, by affidavit, that Berg admitted to him, in a telephone conversation, on *Page 367 
11 November 1981, that he directed Stephens's actions.
 TRIM-LINE'S ALLEGATIONS
Herb Berg, Trim-Line's Distributor Development Manager, contends he was unaware Lee Stephens had sold her business to Bond and that Trim-Line never verbally authorized Bond as the distributor for Trim-Line of South Alabama after Bond's sale of his distributorship to Stephens. Berg states he was informed by Stephens that Bond had approached her concerning the purchase of Trim-Line of South Alabama on 5 October 1981. He contends his next conversation with Stephens was on 12 October 1981 when she called to tell him Bond had attempted to take over her business against her will.
 STEPHENS'S ALLEGATIONS
Stephens contends that Berg encouraged her to "get her distributorship back" after the dispute over the Montgomery distributorship arose. She states however, that Berg did not advise her to convert or appropriate any assets, personal property, accounts receivable, inventory, or equipment of Trim-Line of South Alabama.
 I
First, we consider whether summary judgment was appropriately granted as to Bond's allegations of conversion by Trim-Line. Trim-Line contends that, because there was no agency relationship between it and Stephens, even if Stephens had converted the assets of Trim-Line of South Alabama, it would not be liable. It points to the terms of the Sales Distribution Agreement entered into with Stephens by Trim-Line which expressly disavows any agency relationship.
Where the rights of a third party are at stake, the terms of a contract are not the controlling or governing factors where they are in conflict with the actual facts and the way in which the contract was actually performed. Rust Engineering Co. v.State, 286 Ala. 589, 596, 243 So.2d 695 (1971). Therefore, if Bond has presented any evidence that Stephens acted as an agent for Trim-Line, there is an unresolved question of fact remaining.
The test of whether a relationship is that of independent contractor as opposed to master and servant is whether the alleged master has the reserved right of control over the means and agencies by which the work was done or the result produced. Whether one is the agent of another is generally a question of fact; summary judgment is seldom appropriate as to that issue.Moses v. American Home Assurance Co., 376 So.2d 656 (Ala. 1979).
Because there is evidence that Stephens's actions were motivated by a conversation with Herb Berg, we cannot agree with the trial court that summary judgment in favor of Trim-Line was proper as to the issue of conversion. A factual issue remains as to the question of agency.
Neither can we say as a matter of law that Trim-Line could not be liable to Bond for the conversion of his property. Trim-Line has simply not, as to the conversion claim stated in count one, met its burden of showing the absence of any genuine issue as to all material facts under all applicable principles of substantive law. Bennett v. United Auto Parts, Inc.,294 Ala. 300, 315 So.2d 579 (1975).
 II
Second, we consider whether the trial court erred by granting summary judgment as to Bond's count two, which alleged interference by Trim-Line with the contract between Stephens and Bond for the sale of Trim-Line of South Alabama. Under Alabama law, mere interference is not sufficient to create a cause of action for tortious interference with contract rights; to be actionable, interference must be wrongful, malicious, unlawful, or unjustified. Dick Meyers Towing Service, Inc. v.United States, 577 F.2d 1023 (5th Cir. 1978), cert. denied,440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); Hennessey v.National *Page 368 Collegiate Athletic Ass'n, 564 F.2d 1136 (5th Cir. 1977).
Bond has presented evidence that Trim-Line recognized him as its distributor for the area served by Trim-Line of South Alabama subsequent to Stephens's sale of the business back to him in September of 1981. Both Stephens and Bond state that Berg, as Trim-Line's representative, urged Stephens to get her distributorship back. There is evidence supporting Bond's allegation that Berg knew of the contract of sale between Bond and Stephens and encouraged Stephens to breach her contract of sale with Bond. There is no evidence any interference by Berg with Bond's rights under his contract with Stephens was justified. Because Bond has stated a cause of action against Trim-Line for intentional interference with contract and because there is evidence to support Bond's claim, the trial court erroneously granted summary judgment as to that count.
Therefore, for the above stated reasons, we must reverse the trial court's grant of summary judgment in favor of Trim-Line, Inc., and remand to that court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.