Plaintiff, Charles Joseph Gross, Jr., appeals from the grant of summary judgment by the Circuit Court of Montgomery County in favor of the defendants-appellees, Lowder Realty Better Homes and Gardens (hereinafter "Lowder"); Grant Sullivan, Lowder's sales manager; Rishay Whitaker, a Lowder sales agent; Louise Spencer, also a Lowder sales agent; and Anthony Castanza, purchaser of the real estate involved in the present case. Herbert and Opel Harden, the sellers of the real estate involved, were apparently defendants to this suit originally, but were dismissed prior to the court's ruling on the motion for summary judgment.
The Hardens engaged Lowder Realty and its agents, Sullivan, Spencer, and Whitaker, to list and sell a house in Montgomery, Alabama. The Hardens contractually agreed on September 9, 1984, to sell their residence to Castanza, contingent upon Castanza's obtaining appropriate financing as stipulated in the agreement to purchase. The Castanza contract also contained a clause whereby Castanza had 24 hours to consummate the deal if the Hardens secured another contract to sell the house. Gross subsequently agreed to purchase the same house, contingent upon the first contract with Castanza not being consummated within 24 hours.
On September 11, 1984, at approximately 8:30 p.m., Whitaker notified Castanza of the Gross contract and requested that Castanza verify, in writing, that he had received notice of the Gross contract, which notice would begin the 24-hour time period for Castanza to obtain the necessary financing and to close his contract with the Hardens. Castanza objected, stating that it was unfair that he receive notice late in the evening when he was unable to actively seek the needed financing. Whitaker notified Sullivan of Castanza's objection. Sullivan, who also had contacted Castanza on the night of September 11, 1984, conferred with an attorney the following day, September 12, and was advised that Castanza's objection to the timing of notice might have merit and that Sullivan should again notify Castanza of the Gross contract in the presence of witnesses. Sullivan informed Castanza on September 12, at 11:00 a.m., that Castanza had until 11:00 a.m. on September 13 to secure the needed financing.
Castanza obtained the necessary financing before 11:00 a.m. on September 13, and finalized his contract with the Hardens. The sale was closed on October 17, 1984.
Gross's agent, Virginia Rawlinson, stated in an affidavit that she was told by Spencer, when negotiating the contract for Gross, that "if these people [Castanza and his wife] do not perform their contract within 24 hours of receipt by them of notice that your contract is in existence, then your contract is good." Rawlinson passed on this representation to Gross, who claims that this statement constituted a fraudulent misrepresentation.
Gross filed suit, ultimately alleging (1) fraud and (2) tortious interference with contract. Gross claimed damages for his lost opportunity to purchase the Hardens' house, for his loss of time in negotiating the contract, and for mental anguish.
The issues raised on this appeal are as follows: *Page 592 
 1. Did the trial court err by granting summary judgment in favor of defendants on the plaintiff's fraud count based on a finding that the representation by Lowder was a promise and not a statement of fact and, therefore, not an actionable basis for a fraud claim?
 2. Did the trial court, by granting defendants' summary judgment on the tortious interference with contract count, err in holding that in the absence of fraud no such action could be maintained by plaintiff?
The answer to both questions is no. The judgment of the trial court is affirmed.
The plaintiff's first contention is that the trial court erred when it found that the aforesaid representation from Spencer to plaintiff's agent, Rawlinson, was merely a promise, and not the representation of a material fact. We disagree. Unlike a fraudulent representation of material fact, where the alleged fraudulent representation is a promise the plaintiff must prove that the promise was made by the defendant with the intent not to perform the promise at the time the promise was made. Walker v. Woodall, 288 Ala. 510, 262 So.2d 756 (1972). Failure of the promisor to perform, by itself, is not evidence of the promisor's intent not to perform the promised act at the time the promise was made. Walker v. Woodall, supra; McAdory v.Jones, 260 Ala. 547, 71 So.2d 526 (1954). Failure of the promisor's performance may be considered along with other circumstances to determine if the necessary intent was present when the promise was made. Brock v. Brock, 90 Ala. 86, 8 So. 11
(1890).
In the instant case, we are of the opinion that the trial court correctly found that the defendants' alleged misrepresentation to Gross was merely a promise that the contract would be honored by the Hardens if Castanza did not exercise his right to purchase within 24 hours. We cannot distinguish this representation from those representations in our prior cases in which a promise rather than a representation of material fact was found to exist. See, e.g., Walker v.Woodall, supra, (promise in contract to insure truck); Evans v.Adam's Rib, Inc., 289 Ala. 377, 267 So.2d 448 (1972) (promise to deliver note); Nelson Realty Co. v. Darling Shop ofBirmingham, 275 Ala. 598, 157 So.2d 23 (1963) (promise to remodel leased premises); Bracewell v. Bryan, 57 Ala. App. 494,329 So.2d 552 (1976) (promise to pay commission on sales).
Having found that the representation in the instant case was a promise, we must determine if the plaintiff failed to present a scintilla of evidence to show that the defendants did not intend to perform their promise to the plaintiff when the promise was made. The evidence reveals that Whitaker called Castanza shortly after Whitaker became aware of the Gross contract with the Hardens and requested that Castanza acknowledge, in writing, his receipt of notice of the Gross contract. Castanza refused. Whitaker, at Sullivan's direction, went to Castanza's home the same evening and left a copy of the Gross-Harden contract. Sullivan also called Castanza the same evening to inquire about Castanza's objection and was told by Castanza that Castanza did not feel that the time period should begin running until Castanza could find out whether he could obtain the necessary financing. The next morning, Sullivan spoke with an attorney, who advised Sullivan that Castanza might have a legitimate concern, and that Sullivan should determine if financing for Castanza was available and inform him of this in the presence of witnesses.
Castanza was notified by Sullivan at 11:00 a.m. on September 12, and was given 24 hours to purchase the Harden home. All of this activity occurred after the alleged representation from Spencer to Rawlinson. The foregoing facts simply do not provide a scintilla of evidence that the defendants intended not to perform the promise made to Gross at the time it was made. Therefore, we find that the trial court was correct in granting the defendants' motion for summary judgment. *Page 593 
Plaintiff's second contention is that the trial court erred by granting summary judgment on the plaintiff's tortious interference with contract count. Plaintiff relies upon the language in our recent decision in Bond v. Trim-Line, Inc.,465 So.2d 365 (Ala. 1985), in which we said:
 Under Alabama law, mere interference is not sufficient to create a cause of action for tortious interference with contract rights; to be actionable, interference must be wrongful, malicious, unlawful, or unjustified. Dick Meyers Towing Service, Inc. v. United States, 577 F.2d 1023 (5th Cir. 1978), cert. denied, 440 U.S. 908 [99 S.Ct. 1215, 59 L.Ed.2d 455] (1979); Hennessey v. National Collegiate Athletic Ass'n, 564 F.2d 1136 (5th Cir. 1977).
465 So.2d at 367-68.
Plaintiff argues that, under the standard set out in Bond, there exists at least a scintilla of evidence of a wrongful or unjustified interference by the defendants with plaintiff's contract, and that this scintilla precludes summary judgment.
On the other hand, the defendants contend that Alabama recognizes a cause of action for interference with contractual relations only under two narrow circumstances not applicable to the present case. These circumstances were most recently reiterated in James S. Kemper Co. Southeast, Inc. v. Cox Associates, Inc., 434 So.2d 1380, 1386 (Ala. 1983), where this Court stated:
 As Justice Jones indicated in Homa-Goff Interiors, Inc. v. Cowden [350 So.2d 1035 (Ala. 1977)], "generally Alabama does not recognize a cause of action for the tortious interference with a contract." 350 So.2d at 1038. He went on to note, however, two important exceptions to the rule: "The first involves employer-employee relationships; and the second occurs when a party to a lease has been induced, by fraud or coercion, to breach his contract." Id. See Erswell v. Ford, 208 Ala. 101, 94 So. 67 (1922).
Defendants argue that since the case at hand involves neither an employer-employee relationship nor a lease, summary judgment was properly granted for the defendants.
In order to resolve the issue here presented, we have re-examined the evolution of Alabama law establishing and developing the cause of action for interference with contractual relations, as well as the closely related cause of action for interference with business relations. It is clear from our examination of prior decisions by this court, as well as the decisions of the federal courts applying Alabama law, that the judiciary has been inconsistent in its treatment of both causes of action. The courts have been inconsistent in establishing the applicable scope of the causes of action, as well as in deciding what conduct suffices to support an action. Often, the courts have failed to differentiate between the two actions, this failure resulting in a transmutation of their elements.
The genesis of the tort of intentional interference with business relations in Alabama came in Sparks v. McCreary,156 Ala. 382, 47 So. 332 (1908), wherein the Court held that one's trade, profession, or business was a property right and that an unlawful interference with such a property right would give rise to a cause of action. Traditionally, the plaintiff's prima facie case of intentional interference has consisted of two elements: (1) an intentional act of interference; and (2) consequential harm to the plaintiff's business. See Empiregas,Inc., of Ardmore v. Hardy, 487 So.2d 244 (Ala. 1985); Carter v.Knapp Motor Co., 243 Ala. 600, 11 So.2d 383 (1943); Sparks v.McCreary, supra. Justification for the defendant's action of interference is an affirmative defense and not part of plaintiff's case. St. Louis-S.F. Ry. Co. v. Wade, 607 F.2d 126
(5th Cir. 1979); Empiregas, Inc. of Ardmore v. Hardy, supra;Polytec, Inc. v. Utah Foam Products, Inc., 439 So.2d 683 (Ala. 1983); Sparks v. McCreary, supra. Also, throughout the evolution of the tort of interference with business relations in Alabama, our cases have used a variety of adjectives to describe conduct by a defendant sufficient to give rise to a cause of *Page 594 
action — "wrongful," "unlawful," "malicious," "wanton," and "unjustified." See, e.g., Polytec, Inc. v. Utah Foam Products,Inc., 439 So.2d 683 (Ala. 1983); Purcell Co. v. SpriggsEnterprises, Inc., 431 So.2d 515 (Ala. 1983); Carter v. KnappMotor Co., 243 Ala. 600, 11 So.2d 383 (1943); Sparks v.McCreary, 156 Ala. 382, 47 So. 332 (1908). As is evident from our discussion to follow, these same adjectives have been utilized to describe the conduct necessary to sustain an action for interference with contractual relations.
The cause of action for interference with contractual relations was first recognized in Alabama in Tennessee Coal,Iron Ry. Co. v. Kelly, 163 Ala. 348, 50 So. 1008 (1909), in which the Court opined:
 One of the rights incident to many, if not all, contracts is to be protected from malicious interference. A contract between master and servant is one of these contracts, though the contract of employment be at will, and though the master be free from liability in discharging the servant; yet if the discharge were wrongfully or maliciously procured by a third party, such third party is liable to the servant, and the motive with which the discharge was procured may, in some cases, determine the liability vel non, as well as go to the amount of damages.
163 Ala. at 352, 50 So. at 1010. The Court in Alcazar AmusementCo. v. Mudd Colley Amusement Co., 204 Ala. 509, 86 So. 209
(1920), perpetuated the prospective broad application of the cause of action as alluded to in Kelly, supra. The Alcazar
Court recognized injunctive relief as a remedy for contract interference and said:
 A third party who, with knowledge of the existence of a valid contract between others, interferes with its performance or consciously contributes to the impairment of the rights of a party thereto to avail of its obligations (especially wherefrom a selfish advantage or benefit may accrue to such third party), even though by means of a subsequent engagement between such third party and one of the contracting parties with respect to the subject matter of the contract to which such third party is a stranger, commits a tort and is liable for the consummated wrong, independent of a right of action against the other party to the contract, if the remedy at law is adequate and complete, and the threatened or impending commission of such a tort may be enjoined by the party whose enjoyment of existing contractual rights are thus endangered; the application of the doctrine not being restricted to contracts for personal services.
204 Ala. at 513, 86 So. at 212. The Alcazar case appeared to embrace what has grown to become the rule in a majority of American jurisdictions; that any intentional interference with contractual relations by third parties may give rise to a cause of action.
However, two years later, this Court in Erswell v. Ford,208 Ala. 101, 94 So. 67 (1922), adopted a far narrower recognition of the cause of action, which has become the Alabama rule. TheErswell Court adopted the following rule:
 As to the first proposition, we approve the following statement of the rule:
 "An action cannot in general be maintained for inducing a third person to break his contract with the plaintiff; the consequence after all being only a broken contract for which the party to the contract may have his remedy by suing upon it." Sleeper v. Baker, 22 N.D. 386, 134 N.W. 716, 39 L.R.A. (N.S.) 864, Ann.Cas. 1914B, 1189, where the foregoing statement of the rule is adopted after a review of the cases.
 This question is well discussed also in Chambers v. Baldwin, 91 Ky. 121, 15 S.W. 57, 11 L.R.A. 545, 34 Am.St.Rep. 165, where two exceptions are noted: (1) One was provided by the English Statute of Laborers, applying to cases in which servants were enticed to leave their employment, a substantial counterpart of which is found in our statute (sections 6849 and 6850 of the Code); (2) the other arises in cases where a party has been procured against his will or contrary to *Page 595 
his purpose, by coercion or fraud, to break his contract with another. This, in effect, is the rule announced in U.S. Fidelity Co. v. Millonas, 206 Ala. 147, 89 So. 732, and, we apprehend, is the rule adopted by the Court of Appeals in McCluskey v. Steele, 18 Ala. App. 31, 88 So. 367, where quite a number of the adjudications on this subject are cited.
208 Ala. at 103, 94 So. at 69.
The rule put forward in Erswell, supra, was reaffirmed and expanded in Louisiana Oil Corp. v. Green, 230 Ala. 470,161 So. 479 (1935), wherein the Court said:
 It is our understanding that the effect of our cases is to hold that no such claim of damages is recoverable in any form of action, unless it interferes with one's business, trade, or employment or, as pointed out in Erswell v. Ford, supra, coercion or fraud is used. 5 R.C.L. 1101, § 49; McCluskey v. Steele, supra.
230 Ala. 473, 161 So. 481. The Green Court stated that the broader rule announced in Alcazar, supra, was "not authoritative." Id.
The statement of the rule in Green, supra, was consistently followed by the Alabama courts until this Court's decision inHoma-Goff Interiors, Inc. v. Cowden, 350 So.2d 1035 (Ala. 1977), in which this Court stated the rule and its exceptions as follows:
 [G]enerally, Alabama does not recognize a cause of action for the tortious interference with a contract. There are, however, two important exceptions to this rule which are set forth in Erswell v. Ford, 208 Ala. 101, 94 So. 67 (1922): The first involves employer-employee relationships; and the second occurs when a party to a lease has been induced, by fraud or coercion, to breach his contract.
350 So.2d 1038.
Subsequent decisions of this Court and the Court of Civil Appeals have reiterated that the second exception, i.e., the exception for a fraudulent or coercive inducement to breach, is applicable only within the lease context. See e.g., James S.Kemper Co., supra; Sutton's Music Co. v. Top Music Co.,377 So.2d 1092 (Ala.Civ.App. 1979). Contra, Purcell, supra; Day v.Ray E. Friedman Co., 395 So.2d 54 (Ala. 1981) (Torbert, C.J., dissenting). It is our understanding that the second exception as stated in Homa-Goff, supra, i.e., the exception for fraudulent or coercive inducement to breach, was not intended to be limited to the lease context. Although the intentional procurement of the breach of a lease agreement comes within the second exception announced in Erswell, supra, Erswell
recognizes that an action may be predicated upon the intentional interference with any contractual relationship so long as fraud or coercion is utilized by the defendant.
As previously noted, a thorough reading of our cases, as well as the decisions of the federal courts applying Alabama law, reveals that there is confusion as to what conduct gives rise to a cause of action for interference with contractual relations or for interference with business relations.
As concerns interference with contractual relations, in JamesS. Kemper Co. Southeast, Inc. v. Cox Associates, Inc.,supra, we observed that the requirement of fraud or coercion applies only to the second exception, i.e., when a party to a contract has been induced to breach his contract. With regard to the first exception, we said in James S. Kemper Co.,supra:
 To be actionable, interference with the employer-employee relationship must be an affirmative, intentional, knowing, malicious, unjustified or unlawful interference with the contractual rights. Brown v. Chem Haulers, Inc., 402 So.2d 887 (Ala. 1981); Alcazar Amusement Co. v. Mudd Colley Amusement Co., 204 Ala. 509, 86 So. 209
(1920).
434 So.2d at 1386 (emphasis added). This particular language used to describe actionable contract interference first appeared in Brown v. Chem Haulers, Inc., 402 So.2d 887 (Ala. 1981), and was apparently adopted from the Fifth Circuit Court of Appeals decision in Hennessey v. National Collegiate *Page 596 Athletic Ass'n, 564 F.2d 1136 (5th Cir. 1977), wherein the court observed:
 Mere interference is not by itself sufficient. To be actionable, the interference must be — depending upon the particular opinion one reads — "wrongful," "malicious," "unlawful," or "unjustified."
564 F.2d at 1143.
Despite the obvious confusion of the law in this area, we find that the instant case can be resolved by observing that plaintiff's action does not come within either of the limited exceptions heretofore recognized as giving rise to an action for interference with contractual relations. First, there is no employee-employer relationship in this case. It follows that plaintiff's reliance on the language found in Bond, supra, is misplaced, because Bond involved a contractual employment fact situation. There was no finding of fraud or coercion required to be made under the facts of Bond. Second, having already decided that the plaintiff has failed to provide a scintilla of evidence to make out a case of fraud, we concluded that there is no evidence of fraud or coercion to sustain the action under the second exception. The trial court correctly granted summary judgment against plaintiff on the contract interference count in the instant case because plaintiff has failed to come within either limited exception allowing that cause of action.
Having decided the case at bar, we are left with what we perceive to be an outdated and inconsistent body of law pertaining to intentional interference with business and contractual relationships. Alabama's limited recognition of the tort of interference with contractual relations is clearly a minority position; the vast majority of jurisdictions recognize a broad application of the cause of action.[1] The authority relied upon by this Court in earlier years to fashion the Alabama rule represented what was then the minority view, a view which has since that early time been largely repudiated.[2]
The general rule firmly meshed into the law of most jurisdictions today is that one who, without justification to do so, induces a third person not to perform a contract with another, is liable to the other for the harm caused thereby.See 45 Am.Jur.2d Interference § 39 (1969); Annot., 26 A.L.R. 4th 9 (1981). This rule has been brought about by the recognition that rights of a party to a contract or business relation are of paramount importance in the business community and should be protected from unjustified interference by third persons.
Furthermore, many jurisdictions have established a cause of action broad enough to *Page 597 
include not only interference with contractual relations, but also interference with business relations not necessarily involving a contract. See 45 Am.Jur.2d Interference §§ 49-50 (1969); Annot., 5 A.L.R. 4th 9 (1981). Adoption of this broad scope of the cause of action has been recognized as the better approach in those jurisdictions, such as ours, in which an action for interference with business relations is allowed. We see no reason to continue the distinction between the two causes of action and are of the opinion that a single set of elements, broadly defined, so as to include both causes of action, would simplify and clarify the law in this area.
Therefore, we announce a new rule in this state broad enough to encompass both interference with business relations and interference with contractual relations, and which also expands the cause of action for interference with contractual relations so as to incorporate the majority rule. We hold that this tort of intentional interference with business or contractual relations, to be actionable, requires:
(1) The existence of a contract or business relation;
(2) Defendant's knowledge of the contract or business relation;
(3) Intentional interference by the defendant with the contract or business relation;
(4) Absence of justification for the defendant's interference;[3] and
(5) Damage to the plaintiff as a result of defendant's interference.[4]
We have set forth above what we consider to be the broad framework of the cause of action, but defer to future cases a determination of the more detailed questions that undoubtedly will be raised as the cause of action moves from its formative stages and develops into a solidified body of law. We are of the opinion, however, that the principles set out above will provide a workable and sufficiently flexible standard by which to guide the future development of the cause of action.
AFFIRMED.
MADDOX, JONES, ALMON, SHORES and BEATTY, JJ., concur.
TORBERT, C.J., and HOUSTON, J., concur in part and dissent in part.
[1] See Annot., 26 A.L.R.2d 1227 (1952); Annot., 5 A.L.R. 4th 9 (1981).
[2] United States Fidelity Co. v. Millonas, 206 Ala. 147,89 So. 732 (1921), and McCluskey v. Steele, 18 Ala. App. 31, 88 So. 367
(1920), served as the impetus for the Court's holding inErswell. The Millonas and Steele decisions adopted the rationale of courts in California, Indiana, Kentucky, Missouri, North Dakota, New York, North Carolina, and North Dakota, which is explained in the following language from Chambers v.Baldwin, 91 Ky. 121, 15 S.W. 57 (1891):
 An action cannot, in general, be maintained for inducing a third person to break his contract with the plaintiff: the consequence, after all, being only a broken contract, for which the party to the contract may have his remedy by suing upon it. And it seems to us that the rule harmonizes with both principle and policy, and to it there can be safely and consistently made but two classes of exception; for, as to make a contract binding, the parties must be competent to contract and do so freely, the natural and reasonable presumption is that each party enters into it with his eyes open, and purpose and expectation of looking alone to the other for redress in case of breach by him.
91 Ky. at 126, 15 S.W. at 59 (citations omitted). The court inChambers v. Baldwin, adhered to the dissenting opinion of Judge Coleridge in Lumley v. Guy, 2 El. Bl. 216, 118 Eng.Rep. 749, in which Judge Coleridge held such conduct not to be actionable. However, the majority opinion in Lumley v. Guy
recognized an action for the intentional procurement of the breach of any contract, and this has become the majority rule which we now embrace.
We note that with the exception of North Dakota, each of the jurisdictions listed above has expanded the cause of action beyond the limited exceptions recognized by the decisions followed by the early Alabama courts. See Annot., 26 A.L.R.2d 1227 (1952); Annot., 5 A.L.R. 4th 9 (1981).
[3] We retain the principle that justification is an affirmative defense to be pleaded and proved by the defendant. Whether the defendant is justified in his interference is generally a question to be resolved by the trier of fact. Polytec, Inc. v.Utah Foam Products, Inc., 439 So.2d 683 (Ala. 1983). Whether a defendant's interference is justified depends upon a balancing of the importance of the objective of the interference against the importance of the interest interfered with, taking into account the surrounding circumstances. Restatement (Second) ofTorts § 767 (1979), and Comments. The restatement utilizes the term "improper" to describe actionable conduct by a defendant. Non-justification is synonomous with "improper". If a defendant's interference is unjustified under the circumstances of the case, it is improper. The converse is also true. Section 767 of the Restatement lists, and the Comments explain, several items that we consider to be among the important factors to consider in determining whether a defendant's interference is justified:
(a) the nature of the actor's conduct,
(b) the actor's motive,
 (c) the interests of the other with which the actor's conduct interferes,
(d) the interests sought to be advanced by the actor,
 (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
 (f) the proximity or remoteness of the actor's conduct to the interference, and
(g) the relations between the parties.
Restatement (Second) of Torts § 767 (1979).
[4] As with other tortious conduct, one who is liable for interference with a contractual or business relation is liable for compensatory damages, and the award of such damages is governed by existing law in this area. Also, because it is an intentional tort, punitive damages may be awarded if the act of interference was carried out wantonly, or spitefully, or maliciously. See Sparks v. McCreary, 156 Ala. 382, 47 So. 332
(1908).