Steven P. **MEDEIROS,** D.O., Plaintiff,

v.

The **RANDOLPH COUNTY HOSPITAL ASSOCIATION, INC.,** d/b/a Randolph County Hospital, et al., **Defendants.**

Civil Action No. CV–96–D–492–E.

United States District Court, M.D. Alabama, Eastern Division.

Jan. 17, 1997.

John T. Mooresmith, William C. Knight, Jr., Howard Elliot Board, Clark A. Cooper, Robert E. Battle, Burr & Forman, Birmingham, AL, for Plaintiff.

Mark W. Lee, Birmingham, AL, for all Defendants except Maurice Kilpatrick.

Carol Sue Nelson, Tammy L. Dobbs, Birmingham, AL for Maurice Kilpatrick.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

This matter is now before the court on Defendants' motion for partial summary judgment filed on December 20, 1996.[1] The Defendants filed a brief in support of this motion on the same day. Plaintiff filed a response brief in opposition to the Defendants' motion for partial summary judgment on January 6, 1997.

After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that Defendants' motion for partial summary judgment is due to be granted in part and denied in part.

### JURISDICTION

Based upon 28 U.S.C. §§ 1331, 1343, and 1367, the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

### FACTUAL BACKGROUND

The Plaintiff, Dr. Steven P. Medeiros, D.O. ("Medeiros"), is a general surgeon licensed to practice medicine in the State of Alabama. Sometime in 1993 Medeiros decided to relocate his medical practice to Roanoke, Alabama, and in particular to Randolph Hospital, the only hospital in Roanoke. As part of his relocation, Medeiros sought and was awarded medical staff membership and surgical clinical privileges ("Medical Privileges") at Randolph Hospital in September 1993. Medeiros continued to enjoy these privileges until January 25, 1996, when he was informed that his Medical Privileges were terminated.

Medeiros' loss of privileges arose out of an incident occurring on January 22, 1996, while he was working in the Randolph Hospital emergency room. When Medeiros left the emergency room to perform a surgical procedure elsewhere in the hospital, he arranged for Dr. Mitchell Shira ("Shira") to temporarily cover the emergency room during the surgical procedure. While preparing for his surgery, Medeiros was accused by Julia Brazeal ("Brazeal"), a nurse at Randolph Hospital, of leaving the emergency room unmanned. Brazeal called Angela Hammond ("Hammond"), the Director of Nursing at Randolph Hospital, to the operating area. Once Hammond arrived, she and Medeiros entered into a heated verbal exchange which ended when they came into physical contact with each other. According to Medeiros, the physical contact was accidental, but the Defendants suggest that the Plaintiff intentionally "head butted" Hammond. In the aftermath of this altercation, both parties filed police complaints against the other party.[2]

---

1. Defendants in this action include the Randolph County Hospital Association, Inc., d/b/a Randolph County Hospital ("Randolph Hospital"); Randolph Hospital Board of Trustees ("Board of Trustees"); the Hospital Board of Randolph Hospital ("Hospital Board"); Maurice Kilpatrick, the Interim Administrator of Randolph Hospital at time of the events in question; Raymond Angel, Carolyn Daniel, Kenneth Johnson, Jerry Rice, Pam Sizemore, J.T. Edge, Otis Wilson, Gordon Bradshaw, Arlies G. East, James H. Arnett, and James R. Kirby, members of the Board of Trustees at the time of the events in question; and Jimmy Moore, Phillip Brown, LaRue Head, Janell Cottle, and Gerald Stitt, members of the

Hospital Board at the time of the events in question. Maurice Kilpatrick did not originally join in the Defendants' motion and accompanying brief. On December 24, 1996, the court granted a motion for leave to amend the summary judgment motion and on January 14, 1997, Maurice Kilpatrick ("Kilpatrick") was added as a moving party to the motion for partial summary judgment.

2. On April 5, 1996, the Municipal Court of Randolph County determined that the contact was accidental and found both parties innocent of all charges.

During a meeting the following day, Kilpatrick, acting as the interim administrator of Randolph Hospital, notified the Board of Trustees that Medeiros had been involved in a disagreement with Hammond. According to the Defendants' motion for partial summary judgment, Kilpatrick told the Board of Trustees that Medeiros had been involved in both a verbal and physical altercation with Hammond which ended when Medeiros "head butted" Hammond. According to the Defendants, the Board of Trustees decided only to suspend Medeiros' privileges. However, in a letter dated January 24, 1996, Kilpatrick informed Dr. I. Lewis Slavich that the "Board voted unanimously to deny staff privileges immediately for Dr. Steven Medeiros." [3]

Medeiros was presented with a copy of this letter on the morning of January 25, 1996, and was told that his Randolph Hospital Medical Privileges had been revoked and that the procedures and appointments he had scheduled for that day had been canceled. Medeiros called Slavich and Moore to confirm the cancellation of his privileges and was informed that he could no longer use Randolph Hospital to treat patients.

In a letter dated January 30, 1996, Medeiros demanded reinstatement of his Medical Privileges and demanded compensation for the damages caused by the cessation of these privileges. On February 22, 1996, Moore, in his capacity as Hospital Board Chairman wrote Medeiros to explain that Kilpatrick was no longer the interim hospital administrator and that Medeiros' Medical Privileges had not been revoked. Moore represented to Medeiros "that to the extent you believe your Medical Staff membership and clinical privileges have been revoked, such action was not authorized, and has not been ratified by the Hospital's Board of Trustees." In a letter dated February 26, 1996, Medeiros accepted Moore's letter as a notice of reinstatement of his Medical Privileges.

Medeiros filed this action on March 20, 1996. His complaint contains three counts:

(1) a § 1983 claim alleging that Defendants' actions violated several of Medeiros' constitutional rights; (2) a claim for intentional interference with business relations; and (3) a breach of contract claim.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

---

**3.** This letter was copied to James Ray Kirby ("Kirby") who is identified as the Chairman of the Executive Board but referred to by the Plaintiff as Chairman of the Executive Board. Jimmy Moore ("Moore"), the Chairman of the Hospital Board, was also copied on the January 24, 1996, letter.

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

### DISCUSSION

The Defendants raise four issues in their motion for partial summary judgment: (1) whether several members of the Board of Trustees may be dismissed from this suit because they did not participate in the decision to halt Medeiros' Medical Privileges; (2) whether Medeiros is limited to nominal damages on his § 1983 claim; (3) whether Medeiros can prove that the Defendants lacked

justification when they terminated his Medical Privileges; and (4) whether punitive damages may be recovered against the Defendants.

■ The Defendants claim that only the members of the Board of Trustees who were both present during the January 23, 1996, meeting and supported the termination of Medeiros' Medical Privileges should be parties to this action. Relying on this formula, the Defendants claim that Defendants Raymond Angel, Carolyn Daniel, Kenneth Johnson, Jerry Rice, Pam Sizemore, J.T. Edge, Otis Wilson, Gordon Bradshaw, Arlies G. East, James H. Arnett, and James R. Kirby are entitled to final summary judgment on all counts of Medeiros' complaint.

The Defendants cite no case law to support this theory. on the other hand, Medeiros supports each point in his argument urging the court to deny summary judgment for the allegedly absent or dissenting members of the Board of Trustees. As stated earlier, the "party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing" that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The court finds that the Defendants' unsupported assertion does not meet the moving party's initial summary judgment burden and therefore, that this portion of the Defendants' motion for partial summary judgment is due to be denied.[4]

■ The Defendants contend that Medeiros is entitled to only nominal damages on his § 1983 claim because he would have been suspended for the same time period even if the proper due process hearing had been accorded. *See Rogers v. Kelly,* 866 F.2d 997 (8th Cir.1989) (holding that nominal damages are appropriate in cases of due process violations where violation has no impact on substantive decision). The Defendants provide no support for their assertion that Medeiros

---

4. The court also notes that the January 24, 1996, letter described the Board of Trustees vote on Medeiros' loss of privileges as "unanimous." This statement directly conflicts with the Defendants' claim at summary judgment that only certain members were present and certain members present did not vote to stop Medeiros' privileges. Even if the Defendants had satisfied their initial summary judgment burden, this discrepancy would prevent summary judgment for the moving individual Defendants.

would have received the same discipline if due process had been accorded; however, Medeiros points out that Moore makes such an assertion in his affidavit. Additionally, Medeiros points out that he is entitled to present evidence to the Randolph Hospital Medical Staff ("Medical Staff") under Article VI(1)(D) and Article VII(1)(B) of the Bylaws, Rules and Regulations of the Medical Staff of Randolph County Hospital ("Bylaws") before an adverse action may be finalized. Moreover, Medeiros' alleged offense is not one listed as leading to an automatic suspension under Article VI(3) of the Bylaws. Therefore, Moore cannot predict a definite suspension since such a decision is largely out of Moore's hands.

Further, the *Rogers* decision, cited by the Defendants, dealt with an assistant principal who had been embroiled in continuing controversy throughout an entire school year and was facing an almost certain dismissal. The only allegation against Medeiros is over the January 22, 1996, incident with Ms. Hammond, and the extent of Medeiros' culpability in this matter is unclear, as shown by his acquittal during the criminal trial. Therefore, the court finds that Medeiros would not as a matter of law necessarily have been suspended for the same period if he had been allowed to present evidence to the Medical Staff and other hospital decision makers. For that reason, the court finds that the Defendants' motion to restrict Medeiros to nominal damages on his § 1983 claim is due to be denied.

The Defendants also argue that summary judgment is due on Medeiros' claim of intentional interference with business relations. However, the Defendants' assertion is conditioned upon a cursory reading of a single decision. In their brief, the Defendants quote the elements of this tort as described by the Alabama Supreme Court in *Gross v. Lowder Realty Better Homes & Gardens,* 494 So.2d 590, 597 (Ala.1986). The Defendants focus on the fourth element: "[a]bsence of justification for defendant's interference" and claim that Medeiros must prove that the

Defendants acted without justification during the alleged interference.

■ However, the Defendants neglect to mention the footnote in *Gross* which states "[w]e retain the principle that justification is an affirmative defense to be pleaded and proved by the defendant." *Id.* In a more recent decision, the Alabama Supreme Court held that the absence of justification "really relates to an affirmative defense to be pleaded and proved by the defendant." *Soap Co. v. Ecolab, Inc.,* 646 So.2d 1366, 1371 (Ala. 1994); *see also Spring Hill Lighting v. Square D Co., Inc.,* 662 So.2d 1141, 1150 (Ala.1995) ("Justification or competitor's privilege may be presented as a defense."). It is clear that the Defendants bear the burden of proving whether a justification existed in this action. Even if the Defendants had offered evidence of justification, this issue is generally reserved for a jury to determine. *See Gross,* 494 So.2d at 597 n. 3 (citing *Polytec, Inc. v. Utah Foam Products,* Inc., 439 So.2d 683 (Ala.1983)). Therefore, the court finds that summary judgment is not due on Medeiros' business interference claim.

The parties agree that the county entities and individuals acting in their official capacity are immune from punitive damages in § 1983 actions. Therefore, the court finds that summary judgment is due to be granted for the Defendants on Medeiros' request for punitive damages against the county entities and the individual Defendants acting in their official capacity. However, Medeiros claims that punitive damages may be recovered from the individual Defendants acting in their individual capacity. In *Smith v. Wade,* 461 U.S. 30, 35–36, 103 S.Ct. 1625, 1629, 75 L.Ed.2d 632 (1983), the Supreme Court held that punitive damages are proper in § 1983 actions against individual defendants.

■ The Defendants also claim that Medeiros cannot make "the requisite showing" to support a claim of punitive damages. They contend that Medeiros cannot show by clear and convincing evidence [5] that the Defendants "consciously or deliberately engaged in oppression, fraud, wantonness, or

---

**5.** The clear and convincing standard does not apply at the summary judgment stage. *See Hines*

*v. Riverside Chevrolet–Olds,* 655 So.2d 909, 925 (Ala.1994).

malice with regard to [Medeiros'] rights." In *Wade* the Court held that § 1983 punitive damages may be awarded upon a showing that the defendant's conduct is "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." 461 U.S. at 56, 103 S.Ct. at 1640. On the other hand, in intentional interference with business relations actions, punitive damages are available when a defendant acts "wantonly, or spitefully, or maliciously." *Gross,* 494 So.2d at 597 (citing *Sparks v. McCrary,* 156 Ala. 382, 47 So. 332 (1908)). Alabama Code § 6–11–20(b)(3) (1993) defines wantonness as conduct "carried on with a reckless or conscious disregard of the rights or safety of others." If a plaintiff presents substantial evidence of a defendant's wantonness, then the court should preserve the issue for the jury's determination. *See Bozeman v. Central Bank of the South,* 646 So.2d 601, 603–04 (Ala.1994) (holding that trial court erred by granting summary judgment for defendant on plaintiff's claim of wantonness where plaintiff had presented substantial evidence of wantonness); *see also Shoals Ford v. Clardy,* 588 So.2d 879, 884 (Ala.1991) (holding that normally the question of wantonness is a jury question).

■ The court finds that Medeiros' demand for punitive damages under § 1983 against the individual Defendants in their individual capacity may proceed to the jury. Physicians have a constitutionally protected property right in medical staff privileges where the medical staff's bylaws present a detailed procedure for corrective action against staff members. *Shahawy v. Harrison,* 875 F.2d 1529, 1532 (11th Cir.1989) (citing *Northeast Georgia Radiological Assocs. v. Tidwell,* 670 F.2d 507 (5th Cir. Unit B 1982)). As explained earlier, Randolph Hospital's Medical Staff operated under such an extensive set of bylaws. However, the Defendants allegedly failed to follow the approved procedure when terminating Medeiros' Medical Privileges. Furthermore, the Defendants allegedly failed to provide even the most basic pre-termination hearing to Medeiros before the termination of his Medical Privileges. *See Tidwell,* 670 F.2d at 512. Therefore, the court finds that there is a material issue of fact as to whether the Defendants failed to follow the procedures dictated by the Bylaws. This evidence sufficiently demonstrates that Defendants may have acted with recklessness or callous indifference towards the termination of Medeiros' Medical Privileges.

■ The court also finds that Medeiros has created a material issue of fact on the issue of punitive damages for his intentional interference with business relations claim. The genuine issue of material fact over the Defendants' compliance with the Bylaws' procedure is evidence that the Defendants may have acted with "reckless or conscious disregard of the rights [ ] of others." Therefore, Medeiros' claim for punitive damages on his intentional interference claim should proceed to the jury.

## CONCLUSION

Based on the foregoing analysis, it is CONSIDERED and ORDERED that Defendants' motion for partial summary judgment be and the same is hereby GRANTED for Defendants on Medeiros' request for punitive damages under § 1983 against the county entity Defendants and the individual Defendants acting in their official capacity. It is further CONSIDERED and ORDERED that as to all other issues the Defendants' motion for partial summary judgment be and the same is hereby DENIED. The Clerk of the Court is directed to transmit a copy of this Memorandum Opinion and Order by facsimile as well as by United States mail to all parties to this action.